## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ET AL. ex rel. RAYBURN ALEX THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> APOLLO PATH, LLC D/B/A APOLLO LABORATORIES; APOLLO LABORATORIES SERVICES, LLC; ARBOR DIAGNOSTICS, INC.; DOUBLE HELIX MANAGEMENT, LLC; KORENVAES MANAGEMENT, LLC; DAVID KEY; BRIAN OLIVER; and MAX KORENVAES, <br><br> Defendants. | Civil Action No. 3:20-cv-2917-D |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AND FOR *IN CAMERA* REVIEW

AKIN GUMP STRAUSS HAUER & FELD LLP
Elizabeth D. Scott
2300 North Field Street
Suite 1800
Dallas, TX 75201

AKIN GUMP STRAUSS HAUER & FELD LLP
Robert Salcido
Emily Gerry
Robert S. Strauss Tower
2001 K Street N.W.
Washington, DC 20006

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT...................................................................................2

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................................4

    A.    Relator's Employment at Apollo and Double Helix, and His Receipt of Attorney-Client Privileged Communications ............................................4

    B.    Relator's Misappropriation of Defendants' Privileged and Confidential Documents Upon Termination of His Employment ................................................5

    C.    Relator's Identification of Potentially Privileged Documents ...............................6

    D.    Relator's Initial Complaint ..........................................................................8

    E.    Relator's Amended Complaint and Use and Disclosure of Defendants' Potentially Privileged Information...........................................................9

    F.    Communications Between Defendants' Counsel and Relator's Counsel Regarding Possession, Use and Disclosure of Privileged Information.................10

III.    ARGUMENT .........................................................................................................13

    A.    Relator Acted in Bad Faith and Willfully Abused the Judicial Process by Accessing and Converting Defendants' Privileged Materials...............................15

    B.    Relator and His Counsel Acted in Bad Faith and Willfully Abused the Judicial Process by Failing to Disclose Their Possession of Defendants' Privileged Information, Misusing That Information to Amend the Complaint, and Obfuscating Their Misappropriation ...........................................16

        1.    Relator's Counsel's Conduct Was Inconsistent with Texas Ethical Standards....................................................................................17

        2.    Relator's Counsel's Conduct Was Inconsistent with Ethical Obligations Spelled Out in Other FCA Cases...........................................20

        3.    Relator's Counsel's Conduct Was Inconsistent with Industry Practice.....................................................................................22

    C.    Lesser Sanctions Would Not Serve the Interest of Justice....................................23

IV.    CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Oil States Skagit Smatco,*
   664 F.3d 71 (5th Cir. 2011) ....................................................................................13

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   2009 WL 1457036 (D. Ariz. May 21, 2009), *superseded in other part by
   amended statute* ...................................................................................................15

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991).........................................................................................14, 25

*U.S. ex rel. Doe v. X Corp.,*
   862 F. Supp. 1502 (E.D. Va. 1994) ......................................................................15

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,*
   561 F.3d 1298 (11th Cir. 2009) ..............................................................14, 16, 24

*U.S. ex rel. Fair Lab'y Pracs. Assocs. v. Quest Diagnostics Inc.,*
   734 F.3d 154 (2d Cir. 2013).............................................................................20, 24

*U.S. ex rel. Frazier v. IASIS Healthcare Corp.,*
   2012 WL 130332 (D. Ariz. Jan. 10, 2012) ................................................... *passim*

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.,*
   2013 WL 2278122 (C.D. Cal. May 20, 2013) ....................................20, 21, 22, 23

*Havel v. Dentsu McGarry Bowen UK Ltd.,*
   2015 WL 409837 (S.D. Tex. 2015) ..........................................................................1

*U.S. ex rel. Holmes v. Northrop Grumman Corp.,*
   2015 WL 3504525 (S.D. Miss. June 3, 2015) ........................................................15

*U.S. ex rel. Holmes v. Northrop Grumman Corp.,*
   642 F. App'x 373 (5th Cir. 2016) .........................................................................20

*Hunt v. Blackburn,*
   128 U.S. 464 (1888)...............................................................................................24

*Jackson v. Microsoft Corp.,*
   211 F.R.D. 423 (W.D. Wash. 2002), *aff'd,* 78 F. App'x 588 (9th Cir. 2003) .............14, 16, 24

*Link v. Wabash R.R.,*
   370 U.S. 626 (1962)................................................................................................16

ii

*Maldonado v. New Jersey,*
    225 F.R.D. 120 (D.N.J. 2004) ................................................................24

*Mayorga v. Ronaldo,*
    606 F. Supp. 3d 1003 (D. Nev. 2022), *aff'd*, 2023 WL 8047781 (9th Cir. Nov.
    21, 2023) ................................................................................................14

*In re Meador,*
    968 S.W.2d 346 (Tex. 1998) ..................................................... *passim*

*Nalco Co. v. Baker Hughes Inc.,*
    2017 WL 3033997 (S.D. Tex. July 18, 2017) ..........................................1

*Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.,*
    2020 WL 5526553 (N.D. Tex. Sept. 14, 2020) ......................................20

*Perna v. Elec. Data Sys., Corp.,*
    916 F. Supp. 388 (D.N.J. 1995) ...............................................14, 16, 25

*Ponte v. Sage Bank,*
    255 F. Supp. 3d 344 (D.R.I. 2015) ........................................................14

*Raymond v. Spirit AeroSystems Holdings, Inc.,*
    2017 WL 2831485 (D. Kan. June 30, 2017) ....................................20, 25

*Staton Techiya, LLC v. Samsung Electronics Co., Ltd.,*
    2024 WL 4850513 (E.D. Tex. May 9, 2024) ....................................14, 16, 24

*Frazier ex rel. U.S. v. Iasis Healthcare Corp.,*
    392 F. App'x 535 (9th Cir. 2010) ..........................................................13

*United States v. Robinson,*
    121 F.3d 971 (5th Cir. 1997) ...................................................................1

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ............................................................................2, 24

*Woodson v. Surgitek, Inc.,*
    57 F.3d 1406 (5th Cir. 1995) .................................................................17

**Statutes**

31 U.S.C. § 3730(b)(2) ................................................................................6

31 U.S.C. § 3730(h) ..................................................................................15

**Other Authorities**

FED. R. CIV. P. 26(f) ....................................................................................8

Defendants Apollo Path, LLC d/b/a Apollo Laboratories ("Apollo"); Apollo Laboratories Services, LLC ("ALS"); Arbor Diagnostics, Inc. ("Arbor"); Korenvaes Management, LLC ("Korenvaes Management"); Double Helix Management, LLC ("Double Helix"); David Key; Brian Oliver; and Max Korenvaes (collectively, "Defendants") seek an Order (1) for sanctions regarding misconduct by Relator Rayburn "Alex" Thompson ("Relator" or "Thompson") and his counsel for misappropriating, reviewing, using, disclosing, failing to return, and failing to seek the Court's guidance as to the continued possession and use of Defendants' privileged and confidential materials *for over four years*, including (a) dismissing with prejudice Relator's claims—or, in the alternative, disqualifying Relator's counsel—and (b) awarding Defendants their attorneys' fees and expenses that would not have been incurred but for Relator's and his counsel's misconduct; (2) permitting Defendants to submit to the Court *in camera* documents they believe to be privileged in Relator's or his counsel's possession, including declarations and exhibits filed in support of that review;[1] (3) requiring Relator to submit all communications and devices used from January 3, 2016 to the present to a filter attorney agreed upon by Relator and Defendants (the "Parties") for review (hereinafter "filter attorney review"), and to certify to having done so;[2] and (4) requiring

---

[1] The referenced exhibits are attached to the App. in Supp. of Defs.' Mot. for Terminating Sanctions and for *In Camera* Review filed in conjunction with this brief. Defendants intend to submit for *in camera* review the five documents in Relator's and his counsel's possession that have been identified to date as privileged, *see* Declaration of Robert S. Salcido ("Salcido Decl.") (App. 1–5) Ex. A, App. 6–8. Each of these documents contains or reflects confidential communications between a lawyer and a Defendant for the primary purpose of securing legal advice. *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997); *Havel v. Dentsu McGarry Bowen UK Ltd.*, 2015 WL 409837, at *1 (S.D. Tex. 2015); *Nalco Co. v. Baker Hughes Inc.*, 2017 WL 3033997, at *2 (S.D. Tex. July 18, 2017).

Defendants also intend to submit *in camera* information in supporting declarations and exhibits to demonstrate the privileged nature of these documents, as well as Relator's knowledge of their privileged nature. Redacted versions of the Declarations of Ashley Johnston and David Key are attached to the App. in Supp. of Defs.' Mot. for Sanctions. The redacted portions of these documents discuss attorney-client privileged legal advice. Defendants intend to submit the unredacted versions of these documents *in camera* for the Court's review.

[2] Defendants cannot be confident that the five documents they have identified as privileged constitute the full universe of Defendants' privileged materials in Relator's possession because Relator's counsel has confirmed, as discussed below, that they have not searched the documents and communications in Relator's possession. As such, Defendants ask that the Court order Relator to submit to a filter attorney review, in which an outside attorney will review these materials to determine whether any of them are subject to the attorney-client privilege or the attorney work-product doctrine and to ensure that Defendants' privileged materials are not further disclosed or disseminated. As discussed

Relator to return or destroy any documents identified as Defendants' privileged documents through the filter attorney review or the Court's *in camera* review, and to certify to having done so.[3]

## I.    PRELIMINARY STATEMENT

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . .  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citation omitted).  To preserve the privilege and fulfill its purposes, attorneys have a duty to, among other things, (i) promptly inquire into documents they believe may be subject to another party's privilege; (ii) refrain from reviewing or using them until clarification has been received; and (iii) if inquiry cannot be made of opposing counsel, receive guidance from the court.  *See, e.g.*, *In re Meador*, 968 S.W.2d 346, 349–52 (Tex. 1998).

None of that occurred here.  This motion concerns a series of repeated ethical violations by Relator and his counsel over **more than four years**.[4]  Namely:

(i)    Following termination of his employment in December 2019, *see* ECF 52 ¶ 5, Relator retained, without permission, Defendants' privileged and confidential documents and provided such documents to his counsel for use in this litigation, *see generally* Salcido Decl. Exs. B–K, App. 9–53;

---

herein, Relator previously agreed to submit to such a review, but is now refusing to participate, which frustrates Defendants' ability to reclaim all privileged documents misappropriated from them.

[3] On March 5, 2025, the Court granted Defendants' Motion to Dismiss the First Amended Complaint ("FAC").  ECF 77.  The Court dismissed Relator's claims without prejudice and granted him 28 days to file a second amended complaint.  *Id.*  If Relator does not file a second amended complaint within this time period, and if the Court then dismisses claims against Defendants with prejudice, thereby mooting Defendants' request for terminating sanctions, Defendants ask that the Court award them the other forms of sanctions and relief sought in this motion—namely, attorneys' fees and expenses, *in camera* review, filter attorney review of Relator's documents and the return or destruction of any of Defendants' privileged documents in Relator's possession.

[4] Defendants and Relator have exchanged communications related to the improper misappropriation, review, use, disclosure and retention of Defendants' privileged and confidential documents.  For the Court's convenience, the Parties' substantive communications are attached in chronological order as Exhibits B–N of the Salcido Declaration. Defendants' communications with the government regarding potential disclosure of privileged information are attached as Exhibits O–R of the Salcido Declaration.

(ii)    Following termination of his employment in December 2019, *see* ECF 52 ¶ 5, Relator illicitly accessed and misappropriated, without Defendants' knowledge or permission, Defendants' privileged and confidential documents and provided such documents to his counsel for use in this litigation, *see* Salcido Decl. Ex. I at 2 & n.1, App. 43, Ex. L at 1, App. 55;

(iii)   After determining, in July 2020, that Relator's Disclosure Statement and at least six accompanying exhibits that Relator had produced to the government contained potentially privileged information belonging to Defendants, *see* Salcido Decl. Ex. D at 2–3, App. 18–19, Salcido Decl. Ex. I at 2, App. 43, Relator and his counsel failed to apprise the Court during the more than three years the case remained sealed of their possession of documents they, themselves, recognized as potentially privileged or of their disclosure of those documents, *see* ECFs 1, 33;

(iv)    After the case was unsealed in May 2024, ECF 33, Relator and his counsel failed to inform Defendants—until weeks after Defendants confronted them in November 2024 regarding Relator filing an amended complaint referencing Defendants' privileged information, as described below—that they are in possession of documents that Relator's counsel identified ***over four years ago*** as potentially privileged documents belonging to Defendants, *see, e.g.*, Salcido Decl. Ex. B, App. 9–12;

(v)     Following Defendants' motion to dismiss the initial Complaint, ECF 49, rather than inform the Court or Defendants of his possession and disclosure of Defendants' privileged documents, on October 21, 2024, Relator amended his complaint to add, for the first time—in an apparent attempt to correct his pleading deficiencies related to False Claims Act ("FCA") scienter—allegations purporting to reflect legal advice Defendants received from their counsel, ECF 52 ¶¶ 254–260, including a paragraph that quotes from one of the very documents that Relator's counsel identified as potentially privileged ***over four years before filing***, *id.* ¶ 258; and

(vi)    After Defendants' counsel contacted Relator's counsel on November 1, 2024 to express serious concerns regarding the apparent use and disclosure of Defendants' privileged information, *see* Salcido Decl. Ex. B, App. 9–12, Relator's counsel initially feigned ignorance as to the use, disclosure and retention of Defendants' potentially privileged information, *see* Salcido Decl. Ex. C, App. 13–15, identifying two weeks later seven documents that could "reasonably warrant closer scrutiny," *see* Salcido Decl. Ex. D at 2, App. 18, but refusing for three more weeks to produce to Defendants a copy of the document quoted at Paragraph 258 of the FAC (presumably because that document shows that Relator inappropriately stole it from Defendants' system post-termination) or to inform Defendants that six of these same documents had been identified by Relator's counsel as potentially privileged and disclosed to the government ***over four years ago***, *see generally* Salcido Decl. Exs. E–I, App. 21–47, Salcido Decl. Ex. L at 1, App. 55.

Relator and his counsel—as a result of their client's misconduct and by abrogating their

3

own legal and ethical obligations—have acquired knowledge of Defendants' privileged and confidential communications and have attempted to use that knowledge to litigate this action. Absent imposition of the requested sanctions, there is no effective way to redress the prejudice Defendants have already suffered or to protect the integrity of these proceedings from further abuse by Relator and his counsel. Accordingly, the Court should exercise its inherent authority to dismiss Relator's complaint and award Defendants the attorneys' fees and expenses they would not have incurred but for Relator's and his counsel's ethical transgressions. In the alternative to dismissal, the Court should disqualify Relator's counsel from representing Relator in this matter.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Relator's Employment at Apollo and Double Helix, and His Receipt of Attorney-Client Privileged Communications

In January 2016, Apollo hired Relator as Vice President of Marketing and Channel Sales. *See* Declaration of David Key ("Key Decl.") (App. 147–59) ¶ 10, App. 150; Declaration of Ashley Johnston ("Johnston Decl.") (App. 195–216) ¶ 21, App. 200. Relator's job duties involved recruiting, training, and monitoring current and prospective salespeople for Apollo. Key Decl. ¶ 11, App. 150. On October 16, 2017, Relator's employment with Apollo ceased, and he began a new role as a Human Resources employee of Double Helix. Key Decl. ¶ 25, App. 153. His job duties included processing payroll and W-2s, as well as onboarding new employees, performing background checks and ensuring prospective employees were not excluded from federal or state health care programs, but he also continued to recruit, or attempt to recruit, sales representatives for Apollo. *Id.* ¶ 26, App. 153

During the course of Relator's employment with Defendants, David Key, an Apollo Partner and adviser, regularly apprised Relator of legal advice that Apollo was seeking and Apollo's Counsel, Ashley Johnston, provided when that advice was relevant to Relator's job duties. Key

Decl. ¶ 27, App. 153; Johnston Decl. ¶¶ 31–32, App. 202.   Relator also sought out Attorney Johnston's advice directly.  Johnston Decl. ¶ 30, App. 201; Key Decl. ¶ 28, App. 153.  He was familiar with Attorney Johnston's role as Counsel for Apollo, ALS, Arbor, Korenvaes Management and Double Helix and understood that she was providing legal advice to those entities.  Johnston Decl. ¶¶ 30, 33, App. 201–02; Key Decl. ¶ 28, App. 153.

> ### B. Relator's Misappropriation of Defendants' Privileged and Confidential Documents Upon Termination of His Employment

Relator's employment with Double Helix was terminated effective December 4, 2019. Johnston Decl. ¶ 23, Ex. A, App. 200, 217–19; Key Decl. ¶ 29, App. 154.  Relator executed a severance agreement with Double Helix on December 11, 2019.  Johnston Decl. ¶ 24, Ex. A, App. 200, 217–19; Key Decl. ¶ 29, App. 154.  Under that agreement, in exchange for consideration, Relator was required to return all confidential and proprietary information and company property and was prohibited from disclosing confidential knowledge to which he became privy during his employment.  Johnston Decl. ¶ 25, Ex. A, App. 200–01, 217–19; Key Decl. ¶ 30, App. 154.

Relator did not have permission to retain privileged documents following his employment. Johnston Decl. ¶¶ 26, 59–60, App. 201, 209; Key Decl. ¶¶ 30–31, App. 154.  Relator also lacked permission to access his Apollo email account or Apollo systems after his separation to obtain privileged and confidential information. Johnston Decl. ¶ 26, App. 201; Key Decl. ¶ 32, App. 154. Nevertheless, on December 5, 2019, the day after his termination, Relator logged into and accessed Apollo's HR Portal without Defendants' permission.  Johnston Decl. ¶¶ 27–28, Ex. B, App. 201, 220–22.  And on January 5, 2020, over one month after his termination, Relator accessed his Apollo email account to forward material to himself—including a document that his counsel would later identify as potentially privileged.  *See* Salcido Decl. Ex. I at 4–6, App. 45–47 (redacted version of Relator's copy of attorney-client privileged communication quoted at Paragraph 258 of

the FAC, which Relator forwarded from his Apollo email account to his personal Gmail account on January 5, 2020); Johnston Decl. ¶ 29, App. 201.

### C.    Relator's Identification of Potentially Privileged Documents

Prior to filing this FCA action, on June 11, 2020, Relator's counsel emailed a draft Disclosure Statement to the U.S. Attorneys' Office ("USAO") for the District of Massachusetts, consistent with 31 U.S.C. § 3730(b)(2).  *See* Salcido Decl. Ex. J at 1, App. 49.  On July 17, 2020, Relator's counsel emailed the draft Disclosure Statement to the USAO for the Northern District of Texas ("NDTX").  *See* Salcido Decl. Ex. D at 3, App. 19.  He also emailed draft exhibits to NDTX. *Id.*  Relator's counsel purports to have then "conducted an additional review and identified potentially privileged information within [Defendants'] materials" produced to NDTX.  *Id.*

The exhibits to the draft Disclosure Statement that Mr. Fein identified as containing potentially privileged information and that were referenced within the draft Disclosure Statement purportedly consisted of the following (hereinafter the "Potentially Privileged Documents"):

- A January 2020 Email Forwarding an August 2018 Email Chain Between David Key and Mr. Thompson entitled "Fw: Masi Medical" ("2018 Masi Medical Email Chain").

- A document entitled "Fw: Employment Agreement – Alex Thompson" ("January 2016 Email Chain re Employment Agreement").

- A document entitled "ashleyjohnston(1)" ("January 2016 Email Chain re NDA").

- A document entitled "Rayburn Thompson – Compliance and Sales Services Agreement – Summit Diagnostics LLC (redlined 4 21 2016)" ("April 2016 Draft Agreement with Summit Diagnostics").

- A document entitled "Rayburn Thompson – Apollo Laboratory Services – Sales Representative Employment Agreement (Kevin Faulkner)" ("November 2017 Draft Agreement with Kevin Faulkner").

- A document entitled "Screenshot_20200526-123553_Message+.jpeg" (which Mr. Thompson's counsel indicated was "1 of 2 screenshots").

Salcido Decl. Ex. I at 2, App. 43.  Mr. Fein purportedly contacted NDTX the same day, on July 17,

2020, and notified the Assistant United States Attorney ("AUSA") assigned to the case that he had produced potentially privileged information.  Salcido Decl. Ex. D at 3, App. 19.  Mr. Fein purportedly confirmed with the AUSA that the draft Disclosure Statement "would be deleted" and that the exhibits "had not been accessed."  *Id.*

On September 14, 2020, Mr. Fein states that he emailed a revised draft Disclosure Statement along with a draft complaint to NDTX.  *Id.*  He purports that the revised draft Disclosure Statement no longer contained any potentially privileged information.  *Id.*  The revised draft Disclosure Statement also omitted references to "several other documents" previously included as exhibits because Relator's counsel "had questions regarding the timing of when Relator accessed these documents in relation to his termination."  Salcido Decl. Ex. I at 2 & n.1, App. 43.

On September 17, 2020, Mr. Fein claims that he transmitted a revised set of exhibits to NDTX.  Salcido Decl. Ex. D at 3, App. 19.  This submission purportedly did not include the Potentially Privileged Documents, and the previously produced exhibits for which Relator's counsel "had questions regarding the timing of when Relator accessed these documents in relation to his termination" were also allegedly omitted.  Salcido Decl. Ex. I at 2, App. 43.[5]

Relator's attorneys did not, at this time, notify the USAO for the District of Massachusetts that the same draft Disclosure Statement transmitted to that office on June 11, 2020 contained potentially privileged information.  *See* Salcido Decl. Ex. J at 1, App. 49.  Relator's counsel also did not, at this time, assess whether Relator was in possession of other privileged material or retain a filter attorney or other expert to review the documents on Relator's computer.  *See* Salcido Decl. Ex. D at 2, App. 28, Ex. I at 1, App. 42.

---

[5] While Defendants have received confirmation from the Massachusetts USAO that it had no record of accessing Defendants' potentially privileged information, *see* Salcido Decl. Ex. P, App. 71–75, Ex. Q, App. 76–77, Defendants have not received the same confirmation from NDTX, *see* Salcido Decl. Ex. O, App. 65–70, Ex. R, App. 78–80.

### D.    Relator's Initial Complaint

On September 22, 2020, Relator filed, under seal, his initial Complaint against Defendants (excluding Double Helix), alleging violations of the FCA, the Anti-Kickback Statute ("AKS"), the Eliminating Kickbacks in Recovery Act ("EKRA"), and state statutes.  ECF 2.  The initial Complaint did not appear, on its face, to reference the Potentially Privileged Documents.  *See id.*

While the initial Complaint was under seal, the government investigated for over three-and-a-half years before declining to intervene on May 20, 2024.  ECF 32.  During this period, Relator never sought guidance from the Court regarding his possession or the disposition of the Potentially Privileged Documents to minimize the risk of inappropriate disclosure of what Relator's counsel recognized to be potentially privileged documents (such as requesting that the seal be partially lifted so that Defendants could undertake efforts to safeguard their privileged documents from further inappropriate dissemination).  *See* Salcido Decl. Ex. E at 1–2, App. 22–23, Ex. F at 3, App. 28.

On May 23, 2024, the Court ordered that the initial Complaint be unsealed.  ECF 33.  Relator requested that the initial Defendants waive service, and waivers were returned executed on August 16, 2024.  ECF 40.  After service of the Complaint, Relator's counsel still did not disclose to Defendants' counsel or the Court that they possessed what they recognized to be potentially privileged documents so that Defendants could undertake efforts to safeguard their privileged documents from further inappropriate dissemination.  Instead, the existence of what Relator's counsel recognized to be potentially privileged documents remained concealed.

On September 30, 2024, the initial Defendants filed a Motion to Dismiss the initial Complaint.  ECF 49.  On October 21, 2024, counsel for Relator and Defendants met and conferred pursuant to FED. R. CIV. P. 26(f).  *See* ECF 53 at 1.  Relator's counsel continued to conceal their possession and disclosure of potentially privileged materials from Defendants and the Court.

Relator also continued to *not* seek guidance from the Court either regarding his possession or the disposition of the Potentially Privileged Documents.  *See* Salcido Decl. Ex. F at 3, App. 28. Relator's counsel also continued to *not* assess whether Relator was in possession of other privileged material or to retain a filter attorney or other expert to review the documents on his computer.  *See* Salcido Decl. Ex. D at 2, App. 18, Ex. I at 1, App. 42.

### E.    Relator's Amended Complaint and Use and Disclosure of Defendants' Potentially Privileged Information

On October 29, 2024, Relator filed his FAC.  ECF 52; *accord* ECF 64 (redacted version of FAC).  The FAC added Double Helix as a Defendant.  ECF 52.  It also added and removed certain allegations.  *See generally id.*  Upon reviewing the FAC, Defendants became immediately concerned that Paragraphs 254 to 260—new allegations that Relator had added to the FAC—used and disclosed Defendants' privileged information.  *See* Salcido Decl. Ex. B, App. 9–12.

In fact, these paragraphs purport, on their face, to disclose privileged information regarding the legal advice that Attorney Johnston provided to Defendants or legal advice that Defendants sought from her.  ECF 52 ¶¶ 254–60; Johnston Decl. ¶ 42, App. 204.  Paragraphs 254 to 260 purport to set forth not only the time, place, recipients and general subject matter of Attorney Johnston's legal advice, but also the content of the legal advice that was sought and received from Attorney Johnston.  ECF 52 ¶¶ 254–60; Johnston Decl. ¶ 44, App. 204.  In actual fact, Paragraph 258 of the FAC explicitly references one of the Potentially Privileged Documents: the 2018 Masi Medical Email Chain.  *See* Salcido Decl. Ex. D at 2, App. 18, Ex. I at 2, App. 43.  That is, rather than inquire of Defendants regarding whether a document they recognized as potentially privileged was in fact privileged, ***Relator's counsel instead elected to use that document in a publicly filed complaint***

*against the Defendants*.[6]

To date, Defendants have identified five privileged documents that Relator retained post-termination: (i) the 2018 Masi Medical Email Chain; (ii) the April 2016 Draft Agreement with Summit Diagnostics; (iii) the November 2017 Draft Agreement with Kevin Faulkner; (iv) the January 2016 Email Chain re NDA; and (v) the January 2016 Email Chain re Employment Agreement.  *See* Johnston Decl. ¶¶ 56–58, App. 208–09; Salcido Decl. Ex. A, App. 6–8.[7]

### F.    Communications Between Defendants' Counsel and Relator's Counsel Regarding Possession, Use and Disclosure of Privileged Information

On November 1, 2024, immediately after reviewing the FAC, defense counsel wrote to Relator's counsel (i) stating that it "appears that privileged documents and discussions with corporate counsel may have been inappropriately disclosed" and that "[i]f true, [Defendants] are concerned that you not only retained and reviewed privileged information belonging to an opposing party but also publicly disclosed such information in a filing with the Court"; and (ii) demanding that Relator immediately produce to Defendants all potentially privileged documents and information in his and his counsel's possession.  Salcido Decl. Ex. B, App. 9–12.  Since that time, Defendants' counsel and Relator's counsel have exchanged roughly a dozen more substantive

---

[6] On September 30, 2024, three weeks before Relator filed the FAC, Defendants filed their Motion to Dismiss Relator's initial Complaint, which did not include privileged information.  ECFs 2, 50.  Defendants noted that they did not knowingly breach the AKS or EKRA because, among other things, even if Relator's interpretation of those laws were correct, which it is not, the laws are inherently ambiguous.  ECF 50 at 18.  In response, Relator and his counsel decided to amend the complaint to publicly use communications they possessed that they, themselves, recognized to be, at a minimum, potentially privileged to construct an allegation that Defendants knew they were violating law.  *See* ECF 52 ¶¶ 254–60.  That is, they did not use the potentially privileged materials they possessed in their initial Complaint but rather kept their possession hidden from the Court and Defendants—not even informing Defendants once the seal was lifted.  After reading the Motion to Dismiss, they decided, still without informing Defendants, to attempt to use privileged material in the FAC to salvage the litigation.  But the clumsy, ham-fisted way they did so—setting forth the purported time, place, subject matter and content of legal advice, *id.*—telegraphed to Defendants' counsel that Relator must be holding privileged materials and using them to secure a litigation advantage: precisely what the attorney-client privilege exists to prevent.  It was only after Defendants' counsel then confronted Relator's counsel, *see* Salcido Decl. Ex. B, App. 9–12, that Relator's counsel revealed their secret possession and use of Defendants' privileged documents.  *See* Salcido Decl. Ex. E, App. 21–24, Ex. I at 2, App. 43.

[7] Defendants propose that the Court review these documents *in camera*, along with supporting declarations.

written communications regarding Relator's possession, use and disclosure of Defendants' privileged information. *See* Salcido Decl. Exs. C–L, App. 13–57. These communications have been marked by Relator's counsel feigning ignorance as to the fact that they identified—and, in fact, attempted to claw back from the government—six of Defendants' documents as potentially privileged and obfuscating which of Defendants' documents Relator did, in fact, use and disclose.

*First*, Relator's counsel failed, for several weeks, to confirm that documents they identified after an "initial review" as documents that could "reasonably warrant closer scrutiny" were in fact documents that had been produced to, and purportedly clawed back from, the government ***more than four years ago*** because of Relator's counsel's own concerns that these documents were potentially privileged. In a November 15, 2024 letter, Mr. Fein wrote that Relator's counsel "have completed our initial review of the documents in Plaintiff's counsel's possession and have identified seven documents that we want to bring to your attention, giving you the opportunity to assert any applicable privilege" because they could "reasonably warrant closer scrutiny." Salcido Decl. Ex. D at 2, App. 18. In a separate section of the letter, he stated that Relator's counsel, in July 2020, "identified potentially privileged information" in the draft Disclosure Statement and exhibits submitted to NDTX and attempted a claw back, but did not identify what information was produced to NDTX. *Id.* at 3, App. 19.

Despite Defendants' counsel's repeated demands that Relator's counsel identify the potentially privileged material disclosed to the government, *see* Salcido Decl. Ex. E at 1, App. 22, Ex. G at 1, App. 31; Ex. H at 2, App. 36, Relator's counsel, without explanation, refused to do so for weeks, *see* Salcido Decl. Ex. D, App. 16–20, Ex. F, App. 25–29. Finally, on December 5, 2024, Mr. Fein provided a list of the names of the Potentially Privileged Documents, which revealed, for the first time, that six of the seven documents Relator's counsel had recently "identified" after

completing its "initial review" as documents that could "reasonably warrant closer scrutiny," Salcido Decl. Ex. D at 2, App. 18, were the Potentially Privileged Documents Relator's counsel identified as potentially privileged ***over four years ago***, in July 2020, and allegedly tried to claw back from the government after production.  Salcido Decl. Ex. I at 2, App. 43.

*Second*, Relator's counsel repeatedly refused to produce to Defendants the Potentially Privileged Document referenced at Paragraph 258 of the FAC and misrepresented its contents.  In his November 15, 2024 communication to Defendants' counsel, Mr. Fein enclosed six of the seven documents that could "reasonably warrant closer scrutiny."  Salcido Decl. Ex. D at 2, App. 18. While conceding that the seventh document identified after "initial review" was, in fact, explicitly referenced at Paragraph 258 of the FAC, he expressly declined to enclose it, asserting, without explanation, that "we do not believe it is privileged."  *Id.* at 2 & n.1, App. 18.

Despite Defendants' counsel's repeated demands for a copy of the document referenced at Paragraph 258 of the FAC, *see* Salcido Decl. Ex. E at 2, App. 23, Ex. G at 1, App. 31, Ex. H at 2, App. 36, Mr. Fein continued to refuse to provide one.  In his November 27, 2024 letter, Mr. Fein instead provided purported timestamps for the "email chain possessed by Relator, referenced in Paragraph 258 of the FAC" and asserted baselessly that "[i]t is evident that Defendants have in their possession or control the document referenced in paragraph 258 of" the FAC, suggesting that there was thus no need for him to produce the document.  Salcido Decl. Ex. F at 3, App. 28. Finally, weeks later, on December 5, 2024, Mr. Fein produced Relator's version of the document. Salcido Decl. Ex. I at 4–6, App. 45–47.  It is clear from Relator's version why Relator's counsel so vigorously resisted producing it to Defendants:  Relator's version shows clearly that Relator forwarded these emails from his workplace account to a personal Gmail account on January 5, 2020, *id.* at 4, App. 45—over one month after his separation from Double Helix, Johnston Decl.

Ex. A, App. 217–19.  Relator notably **omitted** this email from the purported timestamps in his

November 27, 2024 letter.  Salcido Decl. Ex. F at 3, App. 28, Ex. L at 1 & n.1, App. 55–56.[8]

## III.    ARGUMENT

Relator purposefully converted to his own use and then disclosed to his *qui tam* counsel

Defendants' privileged information for use against Defendants in this action, including privileged

materials he illegally accessed **after** his termination.  Relator's counsel compounded Relator's

misconduct when, even after they recognized that certain documents likely contained privileged

information, Relator's counsel refused to identify those documents to the Court or to Defendants'

counsel.  Relator's counsel then used, in an apparent attempt to salvage this litigation, at least one

of the documents they had identified as potentially privileged **four years earlier** to craft Relator's

FAC.  Relator's counsel concede that Relator provided them with materials that they, themselves,

identified as potentially privileged documents belonging to Defendants.  The taint that the conduct

of Relator and his counsel has introduced to these proceedings can only be cured by dismissal.

A district court possesses inherent authority to impose sanctions, including the power to

dismiss an action "in order to protect 'the integrity of the judicial process.'" *Ben E. Keith Co*., 80

F.4th 695, 702 (5th Cir. 2023) (quoting *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78 (5th

Cir. 2011)); *see also, e.g.*, *Frazier ex rel. U.S. v. Iasis Healthcare Corp*., 392 F. App'x 535, 538

---

[8] In this letter, Mr. Fein also revealed for the first time that "several other documents[] were excluded from the revised Disclosure Statement and exhibits submitted on September 14 and 17, 2020, respectively" because "we had questions regarding the timing of when Relator accessed these documents in relation to his termination."  Salcido Decl. Ex. I at 2 & n.1, App. 43.  On January 29, 2025, after further investigation, Defendants' counsel requested that Relator's counsel identify and produce all documents purportedly clawed back on this basis, as well as advancing the names of two potential filter attorneys to conduct a forensic review of Relator's devices.  Salcido Decl. Ex. L, App. 54–57.  Relator has refused to provide information regarding these documents or to proceed with a forensic review.  *See* Salcido Decl. Exs. M–N, App. 58–64.  Throughout these communications, Relator's counsel also confirmed that they had never sought guidance from the Court regarding their possession, disclosure or use of Defendants' potentially privileged materials, *see* Salcido Decl. Ex. E at 1–2, App. 22–23, Ex. F at 3, App. 28, and Relator's counsel was unable to confirm that Relator had permission to take potentially privileged materials with him post-termination, *see* Salcido Decl. Ex. E at 1, App. 22, Ex. F at 2, App. 27, Ex. G at 1, App. 31, Ex. I at 1, App. 42.

(9th Cir. 2010) ("Sanctions, including dismissal of the complaint, may be granted under the court's inherent power." (citation omitted)).  The inherent power of the court "reaches both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991) (no abuse of discretion in district court's exercise of its inherent power to impose sanctions for bad-faith conduct).  The imposition of sanctions under the inherent powers doctrine serves the "dual purpose of vindicating judicial authority" and providing redress for the litigants who bear the brunt of bad faith acts.  *Id.* at 46 (internal quotations and citations omitted).

Courts have repeatedly held that terminating sanctions are warranted where an opponent has taken and used an opponent's privileged information, both because the misconduct is extreme and because there are no other means of dissipating the resulting taint on the proceedings.  *See, e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306–07 (11th Cir. 2009) (upholding default judgment against defendant as sanction for intercepting and using plaintiff's privileged internal and attorney-client emails); *Mayorga v. Ronaldo*, 606 F. Supp. 3d 1003, 1012–1013, 1019, 1029–31 (D. Nev. 2022) (dismissing case with prejudice for plaintiff's use of "ill-gotten" attorney-client privileged information belonging to Defendants, including continuing to retain Defendants' privileged documents and using them to "craft the complaint"), *aff'd*, 2023 WL 8047781 (9th Cir. Nov. 21, 2023); *Ponte v. Sage Bank*, 255 F. Supp. 3d 344, 350–52 (D.R.I. 2015); *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431–33 (W.D. Wash. 2002), *aff'd*, 78 F. App'x 588 (9th Cir. 2003); *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 398 (D.N.J. 1995); *cf. Staton Techiya, LLC v. Samsung Electronics Co., Ltd.*, 2024 WL 4850513, at *2, 35–36, 49 (E.D. Tex. May 9, 2024) (dismissing case with prejudice due to plaintiff's unclean hands, holding plaintiff acted in bad faith by using stolen attorney-client privileged information).

A court may impose terminating sanctions pursuant to its inherent authority where (i) "the

14

litigant acted in bad faith or willfully abused the judicial process" and (ii) "lesser sanctions would not serve the best interests of justice." *Ben E. Keith Co*., 80 F.4th at 702 (citations and quotation marks omitted).  Both elements are satisfied here given Relator's retention and misappropriation of Defendants' privileged documents following termination and Relator's counsel's (i) failure over **more than four years** to apprise the Court or Defendants that they possessed documents they recognized to be potentially privileged and had previously disclosed to the government; (ii) use of one of these documents in the publicly filed FAC; and (iii) obfuscation of their use and disclosure of Defendants' privileged information.  Dismissal is required to redress Relator's and his counsel's abusive litigation practices and prevent further abuse of the judicial process.

### A.    Relator Acted in Bad Faith and Willfully Abused the Judicial Process by Accessing and Converting Defendants' Privileged Materials

*First*, Relator acted in bad faith by stealing privileged and confidential documents from his employer following his separation.[9]  *See* Johnston Decl. Ex. A, App. 217–19.  As evidenced by the communications from Relator's counsel, as well as Defendants' own internal investigation, Relator has not only retained at least five of Defendants' privileged and confidential documents *for over four years* following his termination, but he has also continued to access and misappropriate Defendants' privileged and confidential information, without Defendants' permission, during, at a minimum, the weeks following his termination.  *See* Johnston Decl. ¶¶ 26–29, 59–60, Exs. A–B,

---

[9] While former employees may serve as relators in cases brought against their former employers under the FCA, the FCA does not authorize illegal conduct or the use of privileged or otherwise protected material in preparing and pursuing a *qui tam* complaint.  *See U.S. ex rel. Holmes v. Northrop Grumman Corp*., 2015 WL 3504525, at *3–4 (S.D. Miss. June 3, 2015) ( "[w]hile the [FCA] permits any person . . . to bring a qui tam suit, it does not authorize that person to violate state laws in the process" (quoting *U.S. ex rel. Doe v. X Corp*., 862 F. Supp. 1502, 1508-10 (E.D. Va. 1994) (FCA does not authorize a *qui tam* relator to disclose privileged communications))).  The protections of the attorney-client privilege are not suspended for the benefit of an employee who seeks to profit by his inside access to privileged documents.  *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc*., 2009 WL 1457036, at *13–14, n.2 (D. Ariz. May 21, 2009) (FCA did not immunize former employee for her "wrongful acts made in the course of looking for evidence of fraud," including "wholesale copying of files admittedly containing confidential, proprietary, and trade secret information"), *superseded in other part by amended statute*, 31 U.S.C. § 3730(h).

App. 201, 209, 217–22; Key Decl. ¶¶ 30–32, App. 154; Salcido Decl. Ex. I at 2 & n.1, App. 43, Ex. L at 1, App. 55.  Relator's conduct was plainly willful and in bad faith.  *Compare Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306 (affirming finding of bad faith where the defendant had continued access to plaintiff's privileged materials and communications); *Jackson*, 211 F.R.D. at 431 (finding bad faith and willfulness where plaintiff illicitly obtained defendant's email messages containing confidential and privileged information and retained the messages for ten months without disclosing them to defendant); *Perna*, 916 F. Supp. at 399–400 (finding willfulness and bad faith where plaintiff viewed and copied defendant's attorney-client privileged materials); *cf. Staton Techiya, LLC*, 2024 WL 4850513, at *41–42 (finding bad faith where plaintiff "misappropriate[ed] . . . privileged information" pre-litigation and stole privileged documents).

**B.    Relator and His Counsel Acted in Bad Faith and Willfully Abused the Judicial Process by Failing to Disclose Their Possession of Defendants' Privileged Information, Misusing That Information to Amend the Complaint, and Obfuscating Their Misappropriation**

*Second*, Relator and his counsel together acted in bad faith and willfully abused the litigation process by (i) failing to disclose to the Court or Defendants *for more than four years* their possession of documents they had identified pre-litigation as Defendants' potentially privileged material, as well as failing to disclose that they had produced that material to the government; (ii) using Defendants' privileged information, including at least one of the documents Relator's counsel had identified as potentially privileged, to amend the Complaint; and (iii) actively attempting to thwart Defendants' efforts to investigate Relator's possession, use and disclosure of Defendants' privileged information once their misconduct finally came to light.

For purposes of terminating sanctions, courts consider counsel's conduct, in addition to the litigant's conduct, where "'an attorney's conduct falls substantially below what is reasonable under the circumstances.'" *Ben E. Keith Co*., 80 F.4th at 702 n.7 (quoting *Link v. Wabash R.R*., 370 U.S.

626, 634 n.10 (1962)); *see Link,* 370 U.S. at 634 n.10 ("[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."); *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1418 (5th Cir. 1995) (affirming dismissal with prejudice as a sanction for counsel's conduct, explaining that "[t]here is no question . . . that a party is bound by the acts of his attorney" (citation omitted)). Here, Relator's counsel acted in a manner that runs afoul of Texas and federal case law and standard industry practice and was plainly below what is reasonable under the circumstances.

### 1. Relator's Counsel's Conduct Was Inconsistent with Texas Ethical Standards

As reflected in *In re Meador*, Relator's counsel's conduct was substantially below what is reasonable under the circumstances and thus can be imputed to Relator for purposes of sanctions, and their failure to abide by the basic ethical standards that the Supreme Court of Texas has outlined demonstrates that Relator and his counsel acted in bad faith and willfully abused the litigation process. In *In re Meador*, the Supreme Court of Texas endorsed the following standard for "dealing with an opponent's privileged information":

> A lawyer who receives on an unauthorized basis materials of an adverse party that she knows to be privileged or confidential should, upon recognizing the privileged or confidential nature of the materials, either refrain from reviewing such materials or review them only to the extent required to determine how appropriately to proceed; she should notify her adversary's lawyer that she has such materials and should either follow instructions of the adversary's lawyer with respect to the disposition of the materials, **or refrain from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court**.

968 S.W.2d at 349–51 (citation omitted) (emphasis added). The court set forth a six-factor test for trial courts to evaluate whether a lawyer's conduct warrants disqualification when the lawyer has "receive[d] an opponent's privileged materials outside the normal course of discovery":

> 1) whether the attorney knew or should have known that the material was privileged;
> 2) the promptness with which the attorney notifies the opposing side that he or

she has received its privileged information;

3)    the extent to which the attorney reviews and digests the privileged information;

4)    the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5)    the extent to which movant may be at fault for the unauthorized disclosure; [and]

6)    the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*Id.* at 351–52.  Among the facts the court observed weighed in favor of disqualifying counsel in *In re Meador* were (i) that counsel "should have known after the most cursory review that the materials which [his client] gave him were privileged"; (ii) that counsel "did not notify [the opposing party] upon receiving the documents, although his clients did produce all of them to [the opposing party] a short time later at their depositions"; (iii) that counsel appeared to have "thoroughly reviewed the materials, as he directly referenced specific portions of the documents in his response to [the opposing party's] sanctions motion"; and (iv) that the opposing party was "not at fault for the breach of its privileges" because its documents were copied and removed without permission.  *Id.* at 352.  The court observed that the fact that counsel received the opposing party's privileged materials from his client did not "prohibit [the] attorney from merely returning an opponent's privileged documents" and that the privilege between counsel and his client "should not affect [the] attorney's obligation to return misappropriated privileged documents."  *Id.* at 353.

Here, Relator's counsel's deviation from ethical standards was more extreme, and their plain disregard of the standards evinced in *In re Meador* warrants the more serious sanction of dismissal.  First, Relator's counsel themselves identified that they were in possession of potentially privileged documents belonging to Defendants, and they were, in fact, sufficiently concerned about the privileged status of these documents that they attempted to claw back from the government.  *See* Salcido Decl. Ex. D at 3, App. 19, Ex. I at 2, App. 43.  Second, Relator's counsel, despite

being in possession of Defendants' privileged documents for over four years, failed to notify the Court[10] and failed to notify Defendants until weeks after Defendants confronted them following their use of privileged information in the FAC. *See generally* Salcido Decl. Exs. B–K, App. 9–53. Third, Relator's counsel clearly reviewed and digested Defendants' privileged information—including privileged information Relator accessed and retrieved after his employment was terminated—to seek a litigation advantage because, as Relator's counsel concede, Relator explicitly referenced at least one of Defendants' privileged documents in the FAC. *See* ECF 52 ¶ 258; Salcido Decl. Ex. D at 2, App. 18, Ex. I at 2, App. 43. Fourth, as noted above, Relator not only retained privileged information following termination of his employment, but he also misappropriated additional privileged information after his employment was terminated. Johnston Decl. ¶¶ 26–29, 59–60, Exs. A–B, App. 201, 209, 217–22; Key Decl. ¶¶ 30–32, App. 154; Salcido Decl. Ex. I at 2 & n.1, App. 43, Ex. L at 1, App. 55.

Finally, with respect to the "significance of the privileged information," Relator and his counsel are plainly using Defendants' privileged information *in an attempt to advance their claims and prejudice Defendants' defense* by seeking to weaponize privileged communications in the FAC. In fact, this section of the FAC purports on its face to use Defendants' privileged information to plead FCA scienter. *See* ECF 52 ¶¶ 254–60. Defendants' privileged documents are clearly "significant," and returning them to Defendants cannot possibly mitigate the prejudice caused by the misuse of Defendants' privileged information in an attempt to prevail in this litigation. [11]

---

[10] Consistent with ethical standards, Relator should have, while the case was sealed, sought guidance from the Court regarding the use and disposition of documents that they realized are potentially privileged. This could have resulted in the Court lifting the seal so Defendants could address this issue and ensure that, to the extent privileged documents were disclosed to the Department of Justice, those documents were not further disclosed to other government agencies, which Defendants are still attempting to confirm did not occur several years later. *See* Salcido Decl. Ex. H at 2, App. 36, Ex. O, App. 65–70, Ex. R, App. 78–80. Moreover, had Relator made the appropriate disclosures, Defendants could have brought the issue to the Court's attention before Relator filed privileged material as part of the FAC.

[11] Relator's counsel's conduct is also inconsistent with rules promulgated by the American Bar Association ("ABA") and the state bar. *See* ABA Model Rule 4.4 (requiring a lawyer who inadvertently receives a document to "promptly

In light of Relator's and his counsel's bad faith and willful misuse and disclosure of Defendants' privileged information, and his counsel's contravention of the plain ethical duties set forth in *In re Meador*, the Court should dismiss this action with prejudice.[12]

### 2.    Relator's Counsel's Conduct Was Inconsistent with Ethical Obligations Spelled Out in Other FCA Cases

*Second*, Relator's counsel's conduct was substantially below what is reasonable in light of clear FCA case law and can therefore be imputed to Relator, and Relator's and his counsel's blatant disregard for the basic ethical standards for *qui tam* relator's attorneys illustrates their bad faith conduct and willful disregard of the litigation process. *See U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122 (C.D. Cal. May 20, 2013); *U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, 2012 WL 130332 (D. Ariz. Jan. 10, 2012). In *Frazier*—the facts of which are strikingly similar to those at issue here—the relator's counsel received from their client potentially privileged materials belonging to the defendant pre-litigation, and did not disclose to the court or to the defendant their possession of those materials until they received a letter from the defendant's counsel one month after service of the unsealed complaint stating they had reason to believe certain privileged documents belonging to the defendant were misappropriated. 2012 WL 130332, at *1,

---

notify the sender"); Tex. R. Disc. Prof'l. Cond. 3.03(a)(2) (prohibiting a lawyer from knowingly failing "to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act"); Tex. R. Disc. Prof'l. Cond. 4.01(b) (providing that a lawyer shall not knowingly "fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client"); Tex. R. Disc. Prof'l. Cond. 8.04(a)(3) (providing that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation").

[12] Should the Court decide not to terminate this action, it should, in the alternative, disqualify Relator's counsel. *See, e.g., Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, 2020 WL 5526553, at *3–5 (N.D. Tex. Sept. 14, 2020) (applying the *In re Meador* test when assessing whether to disqualify attorney for accessing opposing party's privileged materials outside the course of discovery). As described above, five of the six *In re Meador* factors weigh heavily in favor of disqualification. The sixth, prejudice to Relator, is mitigated by the fact that the parties have not yet begun serving discovery requests. Courts routinely disqualify counsel for mishandling an opposing party's privileged materials. *See, e.g., U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 374 (5th Cir. 2016) (affirming disqualification when attorney inappropriately disclosed documents he received under a protective order); *Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 2831485, at *17–18 (D. Kan. June 30, 2017) (applying *In re Meador* test to disqualification); *U.S. ex rel. Fair Lab'y Pracs. Assocs. v. Quest Diagnostics Inc.*, 734 F.3d 154, 168 (2d Cir. 2013); *Hartpence*, 2013 WL 2278122, at *2–4; *Frazier*, 2012 WL 130332, at *15.

5–6.  The court sanctioned the relator's counsel for "breach[ing] an ethical duty to seek a ruling from the Court about the privileged documents and breach[ing] their duty to contact [the defendant] about the documents after the complaint was unsealed," noting that the relator' counsel "never sought a ruling from this Court on [the defendant's] privileged documents before serving the unsealed complaint" and that it was the defendant's counsel that "initiated contact with [the relator's counsel] in an attempt to retrieve those documents back."  *Id.* at *15.  The court excoriated the relator's counsel for "appear[ing] to play 'dumb' as to what privileged documents [the defendant] was talking about" when contacted by the defendant's counsel and "feign[ing] ignorance" as to their possession of potentially privileged materials.  *Id.*[13]

Similarly, in *Hartpence*, the relator's counsel was made aware pre-litigation—in this case, by the USAO—that certain documents in their possession appeared to be the defendant's attorney-client privileged documents.  2013 WL 2278122, at *2.  Like here, "[i]nstead of seeking direction from the Court, the relator's counsel continued to quote in the pleadings portions of privileged documents," including documents that had already been identified as potentially privileged.  *Id.* The court disqualified relator's counsel, advising that "[a]ttorneys are not free, under the standards for proper ethical conduct . . ., to do whatever they want with the privileged documents they obtain from their clients."  *Id.* at *3.  The court rejected the notion that the defendant was not prejudiced, as, like here, "Relators' counsel not only used privileged materials to craft their claims, but incorporated verbatim content from those materials in the pleadings."  *Id.*

---

[13] There is a significant difference between the facts at issue in this action and the facts at issue in *Frazier*.  The court in *Frazier* declined to impose terminating sanctions, instead disqualifying relator's counsel and granting attorneys' fees and costs related to remediating the privilege issues, finding that "[t]he facts presented do not establish extraordinary circumstances of bad faith because [relator's counsel] kept the undisputed, privileged documents in a Sealed Box."  2012 WL 130332, at *15.  Here, in contrast, not only did Relator's counsel fail to segregate Defendants' privileged materials, but they quoted Defendants' privileged document in a public court filing.  ECF 52 ¶ 258.  These facts establish extraordinary circumstances of bad faith, and the Court should dismiss this action with prejudice.

Both *Frazier*, 2012 WL 130332, and *Hartpence*, 2013 WL 2278122, demonstrate that Relator's counsel's conduct was inconsistent with basic ethical expectations for relator's counsel who have received potentially privileged material from defendants, and thus that Relator's counsel's conduct was unreasonable under the circumstances. Relator's and his counsel's bad faith conduct and willful abuse of the litigation process warrant terminating sanctions.

### 3. Relator's Counsel's Conduct Was Inconsistent with Industry Practice

*Third*, Relator's counsel's conduct was substantially below what is reasonable because it was grossly inconsistent with standard industry practice and thus may be imputed to Relator, and the degree of deviation from standard industry practice is further evidence of bad faith and willful abuse of the litigation process. Standard industry practice for counsel in any action who receive an opposing party's potentially privileged documents from their client is to "(i) refrain from reviewing the documents to the greatest extent possible; (ii) notify the other party's attorneys or, if that option is not available because, for example, the action is under seal, seek guidance from the Court; and (iii) refrain from using the documents unless and until the Court has opined that the documents may be used." Declaration of Richard A. Sayles ("Sayles Decl.") (App. 81–98) ¶¶ 16–17, App. 85–86; *accord id.* ¶¶ 20–32, App. 86–88. If, for any reason, counsel is unfamiliar with any of these practices, standard industry practice is to locate and review applicable state and federal case law, or to retain ethics counsel to do so. *Id.* ¶¶ 18–19, App. 86.

Here, Relator's counsel deviated from industry practice in nearly every respect. *First*, Relator's counsel failed to apprise the Court, for the more than three-and-a-half years this action remained under seal, of their possession of documents they had identified in July 2020 as Defendants' potentially privileged documents. *See id.* ¶¶ 36–46, App. 89–91; Salcido Decl. Ex. D at 2–3, App. 18–19, Ex. E at 1–2, App. 22–23, Ex. F at 3, App. 28. *Second*, Relator's counsel failed to apprise Defendants, or the Court, of their possession of Defendants' Potentially Privileged

Documents for months after the case was unsealed—until weeks after filing the FAC referencing Defendants' privileged information and being confronted by Defendants' counsel. *See, e.g.*, Salcido Decl. Ex. B, App. 9–12; Sayles Decl. ¶¶ 47–57, App. 91–94. *Finally*, Relator's counsel grossly deviated from standard industry practice by using Defendants' potentially privileged document in a public filing without obtaining the Court's approval to do so or confirming with Defendants' counsel that the documents were not privileged. *See* ECF 52 ¶ 258; Salcido Decl. Ex. B, App. 9–12, Ex. D, App. 16–20, Ex. I, App. 41–47; Sayles Decl. ¶¶ 58–66, App. 94–96.

In each of these three instances, far from taking such action, there is no evidence that Relator's counsel took *any* action to protect the attorney-client privilege. *See generally* Salcido Decl. Exs. B-K, App. 9–53; Sayles Decl. ¶¶ 39, 45, 56, 65, App. 90–91, 94, 96. This is inexcusable. Had Relator's counsel been, at any point, unsure of what action to take, standard industry practice would have dictated that they locate and review applicable case law. Sayles Decl. ¶¶ 18–19, 42–44, 53–55, 62–64, App. 86, 90–91, 93–96. Given that Relator's counsel's conduct was entirely inconsistent with the holdings of *Hartpence*, 2013 WL 2278122 and *Frazier*, 2012 WL 130332, and the ethical standards set forth in *In re Meador*, 968 S.W.2d, either Relator's counsel willingly, and in bad faith, failed to ascertain what their basic ethical duties were, or they willingly, and in bad faith, failed to discharge those ethical duties. *See* Sayles Decl. ¶¶ 45, 56, 65, App. 91, 94, 96.

### C.    Lesser Sanctions Would Not Serve the Interest of Justice

Finally, lesser sanctions would not serve the interest of justice in this matter. Here, the record shows that a former employee with possession of written privileged materials belonging to his former employer and current adversary has willfully converted to his own use and disclosed to his counsel at least some, if not all, of those materials in the hope and expectation that they would be used against the Defendants in this action. Counsel for that former employee, in violation of fundamental professional and ethical standards, failed to disclose their possession of those

23

privileged materials *for more than four years*, explicitly referenced them in a public court filing, and feigned ignorance when their misconduct was uncovered by the opposing party. Given Relator's and his counsel's blatant disregard for Defendants' attorney-client privilege, the Court cannot have confidence that any sanction short of dismissal will be effective to cleanse this proceeding of the taint Relator already has visited upon it and to protect Defendants from further misuse of their privileged communications by a custodian who has proven himself unworthy of the Court's trust.[14] In similar circumstances, numerous courts have found that the only efficacious remedy is dismissal because there is no other way to ensure that such privileged information is not used against the privilege holder. *See, e.g.*, *Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306–07; *Staton Techiya, LLC*, 2024 WL 4850513, at 49; *Jackson*, 211 F.R.D. at 431–33; *see also Maldonado v. New Jersey*, 225 F.R.D. 120, 137 (D.N.J. 2004) (it is assumed that misappropriated attorney-client privileged information has been used). This Court should follow suit.

## IV.    CONCLUSION

The attorney-client privilege is intended to encourage companies, like Defendants, to seek legal advice and to encourage lawyers, in turn, to provide "full and frank" advice regarding legal risk and compliance. *Upjohn*, 449 U.S. at 389. The "aid of persons having knowledge of the law and skilled in its practice . . . can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). If relators were able to twist, contort and weaponize privileged information in an attempt to salvage a claim, then no party would seek the advice of counsel. Either the risk of disclosure would be too great, or the advice would be furnished in such a guarded manner as to lose all effectiveness.

---

[14] As an alternative ground for dismissal, Defendants request disqualification of Thompson as Relator. Courts have disqualified *qui tam* relators who have converted and used privileged and confidential information belonging to defendants. *See, e.g.*, *Fair Lab'y Pracs. Assocs.*, 734 F.3d at 166–67.

24

Defendants respectfully request that the Court (1) award sanctions in light of the misconduct by Relator and his counsel in misappropriating, reviewing, using, disclosing, failing to return, and failing to seek the Court's guidance as to the continued possession and use of Defendants' privileged and confidential materials, including (a) dismissing with prejudice Relator's claims—or, in the alternative, disqualifying Relator's counsel—and (b) awarding attorneys' fees and expenses that would not have been incurred but for Relator's and his counsel's misconduct;[15] (2) permit Defendants to submit to the Court *in camera* documents they believe to be privileged in Relator's or Relator's counsel's possession, including declarations and documents filed in support of that review; (3) require Relator to submit all communications and devices used from January 3, 2016 to the present for a filter attorney review, and to certify to the same; and (4) require Relator to return or destroy any documents identified as Defendants' privileged documents through the filter attorney review or the Court's *in camera* review, and to certify to the same.[16]

---

[15] This Court should award Defendants attorneys' fees and expenses they would not have incurred but for Relator's and his counsel's ethical transgressions. Courts routinely sanction a party to pay attorneys' fees and expenses where it has acted in bad faith or willfully abused the litigation process, including misappropriating privileged information. *See Chambers*, 501 U.S. at 50 (holding that courts may award attorneys' fees under their inherent authority); *see also, e.g.*, *Perna*, 916 F. Supp. at 390, 400–01 (awarding defendant attorneys' fees and costs "borne by the defendant in connection with this motion" in addition to imposing terminating sanctions where plaintiff viewed and copied defendant's privileged materials); *Raymond*, 2017 WL 2831485, at *20–21 (awarding defendants "the portion of legal fees and costs that they would not have incurred, but for Plaintiffs' retention of the documents" in addition to evidentiary sanctions where plaintiffs failed to notify defendants of their possession of defendants' privileged documents); *Frazier*, 2012 WL 130332, at *15 (sanctioning relator's counsel to pay "attorneys' fees and costs expended by [defendant] in its attempt to get its privileged documents back from" relator's counsel, "includ[ing] the preparation of motions seeking such relief," in addition to disqualifying relator's counsel).

[16] To date, Relator refuses to provide other material belonging to Defendants that he stole, which Defendants have discovered includes privileged material, that he accessed and retrieved after his separation from Defendants. *See* Salcido Decl. Ex. I at 4–6, App. 45–47; *see also* Salcido Decl. Exs. L–N, App. 54–64. Upon information and belief, Relator possesses additional privileged or confidential material belonging to Defendants because Relator (i) "maintained . . . information in his computer" following termination, rather than deleting materials belonging to Defendants, Salcido Decl. Ex. I at 1, App. 42; (ii) continued to access his Apollo email account and Defendants' system remotely following his termination, Salcido Decl. Ex. I at 4–6, App. 45–47; Johnston Decl. ¶¶ 27–29, Exs. A–B, App. 201, 217–22; and (iii) has refused to provide his devices for filter attorney review, Salcido Decl. Exs. L–N, App. 54–64.

Date:  March 10, 2025                    Respectfully submitted,

                                         */s/Elizabeth D. Scott*
                                         Elizabeth D. Scott
                                         Texas Bar No. 24059699
                                         AKIN GUMP STRAUSS HAUER & FELD LLP
                                         2300 North Field Street
                                         Suite 1800
                                         Dallas, TX 75201
                                         Telephone: (214) 969-2800
                                         Facsimile: (214) 969-4343
                                         edscott@akingump.com

                                         Robert S. Salcido
                                         D.C. Bar No. 447951
                                         Emily I. Gerry
                                         D.C. Bar No. 1743489
                                         AKIN GUMP STRAUSS HAUER & FELD LLP
                                         2001 K Street N.W.
                                         Washington, DC 20001
                                         Telephone: (202) 887-4095
                                         Facsimile: (202) 877-4288
                                         rsalcido@akingump.com
                                         (admitted *pro hac vice*)
                                         egerry@akingump.com
                                          (admitted *pro hac vice*)

                                         **Attorneys for Defendants**
                                         **Apollo Path, LLC D/B/A Apollo**
                                          **Laboratories; Apollo Laboratories Services,**
                                          **LLC; Arbor Diagnostics, Inc.; Double Helix**
                                          **Management, LLC; Korenvaes Management,**
                                          **LLC; David Key; Brian Oliver; Max**
                                          **Korenvaes**

## CERTIFICATE OF SERVICE

This is to certify that I, Elizabeth D. Scott, one of the attorneys for Defendants, individually and on behalf of all Defendants, have this day furnished a true and correct copy of the above and foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AND FOR *IN CAMERA* REVIEW** to the following via ECF filing:

Cory Steven Fein
Cory Fein Law Firm
712 Main Street, Suite 800
Houston, TX 77002
cory@coryfeinlaw.com

Seth J. Robbins
Todd & Weld LLP
One Federal St, 27th Fl
Boston, MA 02110
srobbins@toddweld.com

Christopher R. O'Hara
Evan A. Johnson
Todd & Weld LLP
One Federal Street
Boston, MA 02110
cohara@toddweld.com
ejohnson@toddweld.com

Dawn Whalen Theiss-DOJ
US Attorney's Office
Northern District
1100 Commerce Street
Third Floor
Dallas, TX 75242
dawn.theiss@usdoj.gov

Jeffrey A Newman
Jeffrey Newman Law
1 Story Terrace
Marblehead, MA 01945
jeffrey.newman1@gmail.com

This 10th day of March 2025.

*/s/ Elizabeth D. Scott*
Elizabeth D. Scott